## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

TED LECHNER                                                                               Plaintiff

v.                                                                 Civil Action No. 3:23-cv-410-RGJ

MUTUAL OF OMAHA LIFE INSURANCE                   Defendant
COMPANY

\* \* \* \* \*

### MEMORANDUM OPINION & ORDER

Plaintiff Ted Lechner ("Lechner") moves for summary judgment against Defendant Mutual of Omaha Life Insurance Company ("Mutual"). [DE 15]. Mutual responded. [DE 18]. Mutual also moved for summary judgment. [DE 17]. Lechner has not responded to Mutual's summary judgment motion and the time to do so has passed. Accordingly, these motions are ripe for adjudication. For the reasons below, the Court **GRANTS** Mutual's motion for summary judgment, and **DENIES** Lechner's motion for summary judgment.

### I.    FACTUAL BACKGROUND

According to the administrative record, Lechner filed a Short-Term Disability Claim for Employee Statement on May 9, 2022, requesting short-term disability benefits. [DE 13 at 250]. Lechner claims that he became unable to work on April 18, 2022, because of "severe anxiety, depression, panic attacks, sadness, hopelessness, [and] isolation." [*Id.*]. He started treatment for these issues on February 14, 2022, with Dr. Kenneth Oder ("Dr. Oder"), his primary care doctor, and Dr. Katie DeShields, his psychiatrist ("Dr. DeShields"). [*Id.*].

As part of filing for Short-Term Disability, Dr. DeShields completed a Behavioral Health Attending Physician's Statement on May 9, 2022. [*Id.*]. In this statement, Dr. Shields listed Lechner's diagnosis as "unspecified obsessive compulsive and related disorders." [*Id.*]. She also

noted that Lechner began experiencing his symptoms 18 months ago, around the time he was infected with COVID-19, but his symptoms became significantly worse after receiving the COVID-19 vaccine. [*Id.*]. According to Dr. DeShields, Lechner "had brain fog, chronic fatigue, and memory issues" and it was her opinion that Lechner was "unable to perform management tasks that required sustained concentration and remembering a variety of information and/or instructions at once." [*Id.*]. Lechner was originally granted short-term disability, starting April 15, 2022. [*Id.*].

In relevant part, the short-term disability policy states that "[i]f you become Disabled due to an Injury or Sickness, while insured under the Policy, we will pay the Weekly Benefit shown in the Schedule in accordance with the terms of the Policy. Benefits will begin after You satisfy the Elimination Period shown in the Schedule." [DE 13 at 199]. And the short-term disability policy defines disability or disabled as follows:

> Disability and Disabled mean that because of an Injury or Sickness, a significant change in Your mental or physical functional capacity has occurred, as a result of which: 2) during the Elimination Period, you are prevented from performing at least one of the Material Duties of Your Regular Job (on a parttime or full-time basis); and b) after the Elimination Period, you are:
> 
> 1. prevented from performing at least one of the Material Duties of Your Regular Job (on a part-time or full-time basis); and
> 
> 2. unable to generate Current Earnings which exceed 99% of Your Basic Weekly Earnings due to that same Injury or Sickness.
> 
> Disability is determined relative to Your ability or inability to work. It is not determined by the availability of a suitable position with the Policyholder.

[*Id.* at 1093]. Although Lechner filed for short-term disability, Lechner never filed for long-term disability.

On November 28, 2022, Mutual had an external physician consultant board certified in psychiatry complete a review of the records in Lechner's claim file. [*Id.* at 250]. The physician

consultant attempted to contact Dr. DeShields and Dr. Oder to discuss Lechner's case; however, neither responded. [*Id*.]. At the end of the review, the physician's consultant believed that Lechner met the criteria for major depressive disorder and obsessive-compulsive disorder based on Lechner's self-reported symptoms, but the physician consultant also found that "there were no clinical findings documented by either doctor that supported functional impairment." [*Id*.]. Thus, on December 26, 2022, Mutual's claims department completed a second review of Lechner's claim and determined that Lechner "no longer met the Short-Term Disability Group Policy's definitions of Disability and Disabled from his Regular Job." [*Id*. at 251]. Accordingly, Lechner's short-term disability claim was denied as of October 16, 2022. [*Id.* at 267].

On March 13, 2023, Lechner filed an appeal regarding the denial of his short-term disability benefits. [*Id*. at 251]. And Gordon Harris ("Harris"), a senior appeals specialist for Mutual, began investigating Lechner's claim on appeal. [*Id*. at 247]. As part of the investigation, on March 31, 2023, Harris spoke with Lechner. [*Id*. at 251]. In sum, "Lechner asserted he was in no position to go back to work due to his mental status" because his "brain stutters, [he] lose[s] focus, and its hard [for him] to connect the dots." [*Id*.]. Lechner also stated that neither provider has referred him to receive a neurophysical evaluation and he did not want to participate in psychiatric treatments because the medications previously prescribed by Dr. Oder "were not effective in treating his behavior health and cognitive symptoms." [*Id*.]. But Lechner also indicated that "he was very active physically and mentally." [*Id*.]. Specifically, Lechner claimed he exercises two-hours per day, where he alternates between weightlifting and cardiovascular exercise. [*Id*.]. Additionally, Lechner has engaged in a "variety of construction projects" which involve various cognitive functions. [*Id*.].

3

On April 4, 2023, an internal physician consultant board certified in family medicine reviewed the medical records. [*Id.*]. And on April 18, 2023, another external physician consultant board certified in psychiatry completed a review of all the records. [*Id.*]. As part of the April 18th review process, the psychiatry consultant also attempted to speak with Dr. Oder and Dr. DeShields over the course of three days, but they did not respond during this time. [*Id.* at 313]. Accordingly, the psychiatry consultant "explained the findings in the medical records did not support functional impairment from a psychiatric perspective as of October 17, 2022, to November 13, 2022." [*Id.* at 252]. Specifically, the psychiatry consultant explained that "the record did not include any clinical observations that support significant cognitive deficits such as severe memory, concentration, or focus issues that would translate into restrictions in functioning[.]" [*Id.*].

On April 19, 2023, Harris provided Lechner with a copy of the April 4th and April 18th findings, and gave Lechner until May 3, 2023, to review the reports and provide a response. [*Id.*]. On May 1, 2023, Lechner responded saying, that the psychiatry consultant never reached out to Dr. DeShields and provided her contact information for moving forward. [*Id.*]. However, the psychiatry consultant claims that he made further attempts to speak with Drs. DeShields and Oder on May 5, 8, and 9, 2023, but once again, they did not respond. [*Id.* at 318]. Harris updated the record accordingly.

On May 11, 2023, Harris provided a copy of the updated psychiatrist physician consultant report, and gave Lechner until May 19, 2023, to review and provide a written response or any outstanding documentation. [*Id.* at 253, 322-23]. But on May 12, 2023, Lechner's attorney stated that he would not be responding to the May 11th letter. [*Id.* at 253].

Thus, on May 15, 2024, Harris referred all records in the claim file to another internal physician consultant, who was board certified in family medicine, for further review. [*Id.*]. This

4

consultant "was of the opinion that functional impairment from a physical and/or mental/cognitive perspective was not supported." [*Id*.]. A copy of this report was provided to Lechner on May 26, 2023, and he was given until June 8, 2023, to review the report and respond. [*Id*.].

On June 12, 2023, Mutual completed its review of Lechner's appeal for short-term disability denial. [*Id*. at 246]. Harris sent Lechner a letter informing him that the denial of his short-term disability benefits would be upheld, and that he exhausted all his administrative rights to appeal. [*Id*. at 247]. Mutual based its denial on several factors: (1) Lechner's providers had not referred him for a neuropsychological evaluation, (2) Lechner did not go to a psychiatrist for treatment, and (3) Lechner's own statements regarding his active physical and mental lifestyle. [*Id*. at 261]. Based on these facts, Mutual found that the frequency and duration of Lechner's exercise regimen went beyond the demands of what would be required of him at work. [*Id*. at 262].

Lechner then filed a complaint in state court, which was removed to federal court. [DE 1]. In his complaint, Lechner asserts that Mutual wrongfully denied Lechner disability benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132 *et al*. [DE 1-1 at 15].

## II. STANDARD

Summary judgment is required when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it 'might affect the outcome of the suit under the governing law[,]' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *McKay v. Federspiel*, 823 F.3d 862, 866 (6th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). A district court considering a motion for summary judgment may not weigh evidence or make credibility determinations but must view the evidence

5

and draw all reasonable inferences in a light most favorable to the non-moving party. *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"This standard does not change when the parties present cross-motions for summary judgment." *Safety Specialty Ins. Co. v. Genesee Cnty. Bd. of Commissioners*, 53 F.4th 1014, 1020 (6th Cir. 2022). "[T]he court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Campfield v. Safelite Grp., Inc.*, 91 F.4th 401, 410 (6th Cir. 2024) (quoting *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)). "Cross-motions . . . do not mean . . . that one of the motions must be granted." *Reform Am. v. City of Detroit, Michigan*, 37 F.4th 1138, 1147 (6th Cir. 2022). However, they "do authorize the court to assume that there is no evidence which needs to be considered other than that which has been filed by the parties." *Kincaid v. Gibson*, 236 F.3d 342, 347 (6th Cir. 2001) (cleaned up).

In this case, neither party disputes that there is a genuine dispute as to any material fact. All that remain are questions of law.

### III.     ANALYSIS

   a. Lechner's Motion for Summary Judgment [DE 15]

Lechner argues that summary judgment in his favor is proper because Mutual's decision to deny his short-term disability benefits on October 15, 2022, was arbitrary and capricious, and he should not be required to exhaust administrative remedies regarding his long-term disability claim, because doing so would be futile. [DE 15]. Mutual disagrees. [DE 18].

6

### i. Short Term Disability

The Court reviews a denial of benefits by a plan administrator *de novo* "unless the benefit plan gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 613 (6th Cir. 1998) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). This applies both "to the factual determinations as well as to the legal conclusions of the plan administrator." *Id.* (citing *Rowan v. Unum Life Ins. Co.*, 119 F.3d 433, 435 (6th Cir. 1997)). In doing so, the Court is limited to reviewing only the record before the plan administrator at the time of their decision. *Id.* at 615 (citing *Perry v. Simplicity Eng'g*, 900 F.2d 963, 966 (6th Cir. 1990)). That means that, when conducting the *de novo* review, the Court "must take a 'fresh look' at the administrative record but may not consider new evidence or look beyond the record that was before the plan administrator." *Id.* at 616.

If, however, the administrator does have discretionary authority and exercises that authority, the Court must apply the arbitrary and capricious standard of review. *McClain v. Eaton Corp. Disability Plan*, 740 F.3d 1059, 1064 (6th Cir. 2014) (citing *Marks v. Newcourt Credit Grp., Inc.*, 342 F.3d 444, 456 (6th Cir. 2003)). That standard requires the Court to uphold the administrator's decision "if it is 'rational in light of the plan's provisions.'" *Id.* (quoting *Marks*, 342 F.3d at 457). Under arbitrary and capricious review, the Court is still limited to only the record before the plan administrator at the time of their decision. *Id.* (citing *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir. 1991)).

"While 'magic words' are unnecessary to vest discretion in the plan administrator and trigger the arbitrary and capricious standard of review, [the Sixth Circuit] has consistently required that a plan contain 'a *clear* grant of discretion [to the administrator] to determine benefits or

interpret the plan.'" *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 555 (6th Cir. 1998) (citing *Wulf v. Quantum Chem. Corp.*, 26 F.3d 1368, 1373 (6th Cir. 1994)) (emphasis in original). The relevant portion of the policy states:

> By purchasing the Policy, the Policyholder grants Us the discretion and the final authority to construe and interpret the Policy. This means that We have the authority to decide all questions of eligibility and all questions regarding the amount and payment of any Policy benefits within the terms of the Policy as interpreted by Us. Benefits under the Policy will be paid only if We decide, in Our discretion, that a person is entitled to them. In making any decision, We may rely on the accuracy and completeness of any information furnished by the Policyholder, You or any other third party.
>
> \*\*\*\*\*
>
> Policy benefits will be paid only if We determine, in Our discretion, that the claimant is entitled to benefits under the terms of the Policy (see the ERISA Summary Plan Description for additional information included with the Certificate).

[DE 13 at 203]. This language in the policy gives Mutual "discretion" to determine whether "the claimant is entitled to benefits under the terms of the Policy." [*Id.*] And because neither party disputes that Mutual exercised this discretionary authority, the arbitrary and capricious standard applies. *See Shelby Cnty. Health Care Corp. v. Majestic Star Casino*, 581 F.3d 355, 367 (6th Cir. 2009) (holding that district court properly applied *de novo* review when defendant did not actually make the decision on claim for benefits); *Sanford v. Harvard Indus., Inc.*, 262 F.3d 590, 597 (6th Cir. 2001) ("[D]eferential review under the 'arbitrary and capricious' standard is merited for decisions regarding benefits when they are made in compliance with plan procedures" but "this deferential review is not warranted" if the decision is made by "an unauthorized body that does not have fiduciary discretion[.]").

Under the arbitrary and capricious standard, a court "will uphold the administrator's decision 'if it is the result of a deliberate, principled reasoning process and if it is supported by

8

substantial evidence.'" *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 617 (6th Cir. 2006) (quoting *Glenn v. MetLife*, 461 F.3d 660, 666 (6th Cir. 2006)). The arbitrary and capricious standard of review is not, however, a "rubber stamp of [the] administrator's decision." *Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 165 (6th Cir. 2007). Under this standard, a court is required to review "the quality and quantity of the medical evidence and opinions on both sides of the issues." *Id.* The plaintiff ultimately bears the burden of proof in showing that the decision to terminate benefits was arbitrary and capricious. *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir. 1996).

Here, Mutual considered Dr. Oder's progress notes, Dr. Oder's after visit summary reports, lab results, X-ray reports, flowsheets, Dr. DeShields's psychotherapy intake notes, Dr. DeShields's psychotherapy progress, Dr. DeShields's treatment plan, Dr. DeShields's attending physician statement, Lechner's leave of absence application form, Lechner's prescription summary report, Lechner's employee statement, Theresa Putnam's medical referral forms, Grey Taulborg's peer review referral form, and Grey Taulborg's medical referral form, in making its decision regarding Lechner's short term disability. [DE 13 at 495-96]. And Lechner's record was reviewed by external and internal physician consultants. For example, when initially denied, Lechner's file was reviewed by an external physician consultant. Additionally, on appeal, Lechner's file was reviewed by "an internal physician consultant who is board certified in family medicine" and "an external physician consultant who is board certified in psychiatry." [*Id.* at 493]. Thus, Mutual reviewed significant evidence when deciding to deny short-term benefits, including evidence that "supported both sides of the issue," and thus Mutual's decision resulted from principled decision making. *See Yeager*, 88 F.3d at 380. Because of the exhaustive administrative record that was reviewed by Mutual when denying Lechner's short term disability claim, and because the reviews were

9

completed by two external physician consultants and an internal physician consultant, Mutual's denial of Lechner's short term disability benefits is based on substantial evidence and is neither arbitrary nor capricious.

But Lechner argues that Mutual's termination of his short-term disability claim was arbitrary and capricious because Mutual "fail[ed] to properly account for the diagnoses of depression, paranoia, fatigue, OCD, social anxiety, brain fog, and confusion," (2) "disregarded substantial medical evidence provided by the treating physicians[,]" and (3) "failed to consider the combined impact of these conditions." [DE 15 at 2318].

However, "[a]lthough the evidence may be sufficient to support a finding of disability, if there is a reasonable explanation for the administrator's decision denying benefits in light of the plan's provisions, then the decision is neither arbitrary nor capricious." *Fenwick v. Hartford Life & Accident Ins. Co.*, 457 F. Supp. 3d 603, 608 (W.D. Ky. 2020). And here, Mutual denied Lechner's claim for short term disability because "the medical documentation fails to provide sufficient medical evidence to substantiate restrictions and limitations that would preclude [Lechner] from performing the Material Duties of [his] Regular Job[.]." [DE 13 at 1316]. Because Mutual's reasoning is in line with its above discussed plan's provision, Mutual's denial of Lechner's disability is neither arbitrary nor capricious, even though Lechner argues that Mutual failed to properly account for multiple diagnosis and disregarded substantial medical evidence by treating physicians.

As such, Mutual's decision to uphold Lechner's termination of short-term benefits was based on substantial evidence and was neither arbitrary nor capricious.

*ii. Long-Term Disability*

Lechner also argues that he is entitled to long-term disability benefits. [DE 15 at 2324]. Lechner claims that "[Mutual] cut off [Lechner] one week before the exhaustion of his [short-term disability] plan thus cutting off access to [long-term disability]." [*Id*.]. In response, Mutual asserts that Lechner "clearly never applied for benefits under his employer's long-term disability policy[,]" and is therefore, failed to exhaust his administrative remedies. [DE 18 at 2375].

"[I]t is well settled that ERISA plan beneficiaries must exhaust administrative remedies prior to bringing suit for recovery on an individual claim." *Hill v. Blue Cross & Blue Shield*, 409 F.3d 710, 717 (6th Cir. 2005) (emphasis added) (citing *Costantino v. TRW, Inc.*, 13 F.3d 969, 974 (6th Cir. 1994)). However, a court is "obliged to exercise its discretion to excuse nonexhaustion where resorting to the plan's administrative procedure would simply be futile or the remedy inadequate." *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 419 (1998) (internal citation omitted). To satisfy the high standard of futility," [a] plaintiff must show that 'it is certain that his claim will be denied on appeal, not merely that he doubts that an appeal will result in a different decision.'" *Id.* at 419 (citation omitted). "Generally speaking, [the Sixth Circuit] ha[s] applied the administrative-futility doctrine in two scenarios: (1) when the Plaintiffs' suit [is] directed to the legality of [the plan], not to a mere interpretation of it, and (2) when the defendant lacks the authority to institute the [decision] sought by Plaintiffs[.]" *Dozier v. Sun Life Assurance Co. of Canada*, 466 F.3d 532, 534-35 (6th Cir. 2006) (internal citations and quotations omitted).

Here, Lechner neither challenges the legality of the plan, nor whether Mutual lacks the authority to institute the decision sought. *See Dozier*, 466 F.3d at 534-35. Rather, Lechner claims that filing for long-term disability would be futile because Mutual denied Lechner's short-term

11

disability claim. [DE 15 at 2324]. However, it would not be futile for Lechner to exhaust administrative remedies.

First, the long-term disability policy does not require an employee to exhaust short-term disability benefits to be eligible. [*See* DE 13 at 160]. The long-term disability policy provides that when Mutual receives proof that a covered person is disabled under the policy, Mutual will pay the covered person a monthly benefit after the end of the elimination period. [*Id*.]. And the elimination period is the later of 180 calendar days, or the date short-term disability ends. [*Id*. at 148]. Thus, contrary to Lechner's argument, Lechner's long-term disability benefit is not conditional on his short-term disability claim.

Second, courts in the Sixth Circuit have held that the denial of short-term disability benefits, alone, cannot excuse exhaustion of the long-term disability administrative process. *See Hogan v. Jacobson*, No. 3:12-CV-820-DJH, 2015 WL 1931845, at *3 n.3 (W.D. Ky. Apr. 28, 2015), aff'd, 823 F.3d 872 (6th Cir. 2016) ("The fact that [plaintiff] was denied STD benefits does not necessarily mean that a claim for LTD benefits would be futile; . . . her right to receive long term disability benefits was not predicated on her having received short term disability benefits."); *Goines v. Goines v. Liberty Life Assurance Co. Bos*., No. 3:17CV-00103-JHM, 2017 WL 1788669, at *3 (W.D. Ky. May 4, 2017). And Lechner's long-term disability plan and short-term disability plan are two separate plans with distinct eligibility requirements. [*See* DE 13 at 140, 190, 199, 1080, 1115]. Therefore, denial of Lechner's short-term disability benefits does not render exhaustion of administrative remedies for his long-term disability benefits futile.

For these reasons, the Court concludes that the Lechner has failed to establish by a clear and positive indication that the administrative remedies available under the long-term disability

12

policy would be inadequate and that filing a long-term benefits claim would have been futile. Thus, Lechner's Motion for Summary Judgment is **DENIED**.

    b. <u>Mutual's Motion for Summary Judgment [DE 17]</u>

Mutual also moves for summary judgment against Lechner, arguing that summary judgment in its favor is proper because: (1) the evidence in the administrative record "clearly demonstrates" that Lechner was not entitled to short-term disability benefits after October 16, 2022 "and as such, [Mutual's] decision was not arbitrary and capricious[,]" and (2) Lechner failed to exhaust administrative remedies for long-term disability benefits. [DE 17 at 2329]. Lechner failed to respond and the time to do so has passed.

      *i. Short-Term Disability*

As discussed above, Mutual's decision to deny Lechner's short-term disability benefits claim was not arbitrary or capricious. For one, Mutual considered an exhaustive administrative record, which included: Dr. Oder's progress notes, Dr. Oder's after visit summary reports, lab results, X-ray reports, flowsheets, Dr. DeShields's psychotherapy intake notes, Dr. DeShields's psychotherapy progress, Dr. DeShields's treatment plan, Dr. DeShields's attending physician statement, Lechner's leave of absence application form, Lechner's prescription summary report, Lechner's employee statement, Theresa Putnam's medical referral forms, Grey Taulborg's peer review referral form, and Grey Taulborg's medical referral form. [DE 13 at 495-96]. And because Mutual reviewed significant evidence when making its decision, including evidence that "supported both sides of the issue," Mutual's decision was the result of principled decision making. *See Yeager*, 88 F.3d at 380. However, the Court must still determine whether Mutual's denial of short-term disability benefits was permitted by the plan to find in Mutual's favor.

13

In relevant part, the short-term disability policy grants Mutual "the discretion and the final authority to construe and interpret the Policy." [DE 13 at 203]. And the short term-disability policy sates that benefits can end when the policy holder "fails to provide [ ] satisfactory proof of continuous disability." [DE 13 at 200]. Therefore, Mutual can end short-term disability benefits when a policy holder fails to provide "satisfactory" proof of continuous disability.

Here, Mutual determined that Lechner failed to provide satisfactory proof of continuous disability. Specifically, Mutual stated that Lechner's claim was denied because

> …the medical documentation fails to provide sufficient medical evidence to substantiate restrictions and limitations that would preclude you from performing the Material Duties of your Regular Job on a part-time or full-time basis beyond October 16, 2022. Therefore, no benefits are payable, and your claim has been denied from October 17, 2022, ongoing.

[DE 13 at 322]. Thus, because Mutual has the final authority to interpret the policy, and Mutual determined that Lechner failed to provide satisfactory proof of continuous disability, Mutual was within its policy rights to terminate ongoing short-term disability benefits. Accordingly, Mutual's Motion for Summary Judgment regarding Lechner's claim for short-term disability is **GRANTED**.

### ii. Long-Term Disability

There is no dispute that Lechner failed to file a long-term disability claim. Because it is undisputed that Lechner failed to exhaust his administrative remedies regarding long-term disability, and because this Court found above that exhausting administrative remedies was not futile here, Mutual's Motion for Summary Judgment regarding Lechner's claim for long-term disability is **GRANTED**.

## CONCLUSION

Accordingly, the Court, having considered the parties' motions and related filings and being otherwise sufficiently advised, **IT IS ORDERED** as follows:

(1) Lechner's Motion for Summary Judgment [DE 15] is **DENIED**.

(2) Mutual's Motion for Summary Judgment [DE 17] is **GRANTED**.

(3) The Court will enter a separate judgment.

March 3, 2025

Rebecca Grady Jennings, District Judge
United States District Court